**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SONDAI AUSTIN,<br><br>      **Plaintiff,**<br><br>v.<br><br>J.C. PENNEY CORPORATION, INC. AND TARAH TORREZ<br><br>      **Defendants.** | Case No. 2:18-CV-02207-JAR-TJJ |

**MEMORANDUM AND ORDER**

This matter arises out claims brought by Plaintiff Sondai Austin against Defendants J.C. Penney Corporation ("JCPenney") and Tarah Torrez, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pregnancy Discrimination Act, and the Family Medical Leave Act ("FMLA"). On July 16, 2018, Defendants filed a Motion to Stay the Case Pending Arbitration (Doc. 9). In a Report and Recommendation filed on October 1, 2018 (Doc. 19), Magistrate Judge Teresa J. James recommended that the Court grant Defendants' motion. This matter is currently before the Court on Plaintiff's Objection to the Magistrate Judge's Report and Recommendation to Compel Arbitration (Doc. 20). Having considered Plaintiff's objections and Defendants' Response (Doc. 21), and having reviewed Judge James's Report and Recommendation, this Court overrules Plaintiff's objections, adopts the Report and Recommendation, and grants Defendants' motion to stay the case.

**I.    Legal Standard**

    **A.    Review of a Report and Recommendation**

The standard the Court employs when reviewing objections to a report and recommendation, found in 28 U.S.C. § 636(b)(1), provides:

> A judge of the court shall make a de novo determination of those
> portions of the report or specified proposed findings or
> recommendations to which objection is made. A judge of the court
> may accept, reject, or modify, in whole or in part, the findings or
> recommendations made by the magistrate judge. The judge may
> also receive further evidence or recommit the matter to the
> magistrate judge with instructions.

The Tenth Circuit requires that objections to a magistrate judge's recommended disposition "be both timely and specific to preserve an issue for de novo review by the district court."[1] An objection is timely if it is made within fourteen days after service of a copy of the recommended disposition.[2] An objection is sufficiently specific if it "focus[es] the district court's attention on the factual and legal issues that are truly in dispute."[3] If a party fails to make a proper objection, the court has considerable discretion to review the recommendation under any standard that it finds appropriate.[4]

### B. Motion to Compel Arbitration

While the interpretation of contracts—including arbitration agreements—is generally a matter of state law, the Federal Arbitration Act ("FAA") imposes rules beyond those found in state contract law.[5] The FAA applies to written arbitration agreements in any contract "evidencing a transaction involving commerce."[6] Congress designed the FAA "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate" and, by enacting the FAA,

---

[1] *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996); *Adkins v. Koduri*, No. 16-4134-DDC, 2016 WL 5745550, at *1 (D. Kan. Oct. 3, 2016).

[2] Fed. R. Civ. P. 72(b)(2).

[3] *One Parcel of Real Prop.*, 73 F.3d at 1060; *Adkins*, 2016 WL 5745550, at *1.

[4] *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citations omitted).

[5] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (citing *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009); *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

[6] 9 U.S.C. § 2.

2

created "a liberal federal policy favoring arbitration agreements."[7]  Under the FAA, a court should compel arbitration if it finds that (1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of the agreement.[8]  When determining the scope of an arbitration agreement, "[d]oubts should be resolved in favor of coverage."[9]

"If a contract contains an arbitration clause, a presumption of arbitrability arises, particularly if the clause in question contains . . . broad and sweeping language."[10]  However, the presumption of arbitrability disappears when the parties dispute the validity and enforceability of an arbitration agreement.[11]  "[W]hether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate."[12]  "No party can be compelled to submit a dispute to arbitration without having previously agreed to so submit."[13]  "A court may compel arbitration of a particular dispute . . . only when satisfied that the 'making' of the agreement to arbitrate is not at issue."[14]

When a party moves to compel arbitration and the opposing party disputes the validity of the arbitration agreement at issue, "the court uses a burden-shifting framework similar to that used in deciding summary judgment motions."[15]  "Under this well-settled standard, summary

---

[7] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[8] 9 U.S.C. §§ 2–3.

[9] *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

[10] *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995); *see also Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014).

[11] *Bellman*, 563 F. App'x at 613 (quoting *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998)).

[12] *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016) (citing *United Steelworkers*, 363 U.S. at 582).

[13] *Id.* (citation omitted).

[14] *Rangel v. Hallmark Cards, Inc.*, No. 10-4003-SAC, 2010 WL 781722, at *4 (D. Kan. Mar. 4, 2010) (quoting *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)).

[15] *Id.*; *see also, e.g.*, *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citations omitted); *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1336 (D. Kan. 2000) (citations omitted).

judgment is appropriate if the moving party demonstrates there is 'no genuine issue as to any material fact' and that it is 'entitled to judgment as a matter of law.'"[16] In the context of a motion to compel arbitration, this standard requires the moving party to present evidence demonstrating the existence of an enforceable arbitration agreement.[17]

If the movant makes such a showing, the burden shifts to the non-movant to submit evidence showing a genuine issue of material fact as to the making of the agreement.[18] A fact is "material" if, under the applicable substantive law it is "essential to the proper disposition of the claim."[19] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[20] "To demonstrate a genuine issue of material fact as to the making of the agreement to arbitrate, the facts 'must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein.'"[21] "In deciding whether the non-movant has identified a genuine issue of material fact for trial, 'the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.'"[22] If the non-movant demonstrates a genuine issue of material fact as to the making of an agreement, then the district court must hold a trial on the existence of an agreement to arbitrate.[23]

---

[16] *SmartText Corp.*, 296 F. Supp. 2d at 1262 (citing Fed. R. Civ. P. 56(c)).

[17] *Id*. at 1263 (citations omitted).

[18] *Id*. (citations omitted).

[19] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs, Inc*., 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

[20] *Thomas v. Metro. Life Ins. Co*., 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

[21] *Rangel v. Hallmark Cards, Inc*., No. 10-4003-SAC, 2010 WL 781722, at *4 (D. Kan. Mar. 4, 2010) (quoting *Adams v. Am. Guar. & Liab. Ins. Co*., 233 F.3d 1242, 1246 (10th Cir. 2000)).

[22] *Id*. (quoting *Anderson*, 477 U.S. at 255).

[23] *SmartText Corp*., 296 F. Supp. 2d at 1262 (citing 9 U.S.C. § 4, which provides that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."); *see also Klocek v. Gateway, Inc*., 104 F. Supp. 2d 1332, 1336 (D. Kan. 2000) ("If the parties dispute making an arbitration agreement, a jury trial on the existence of an agreement is warranted if the

4

"However, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'"[24]

## II. Factual Background

Upon de novo review, the Court finds that the following facts are either uncontroverted, or if controverted, construed in the light most favorable to Plaintiff.[25] Plaintiff Sondai Austin is a former employee of Defendant JCPenney, where she was supervised by Defendant Tarah Torrez. Originally a temporary employee, Plaintiff began full-time employment with JCPenney on October 28, 2013.

As a new full-time JCPenney Associate, Plaintiff completed the new hire onboarding process on Human Resource's online portal, the Associate Kiosk. The onboarding process is a password-protected system, requiring new employees to electronically review, complete, and/or sign various employment forms containing personal data, including a Form W-4, Associate Discount Card, Benefit Summary Plan Description, and Binding Mandatory Arbitration Agreement ("Arbitration Agreement"). After setting up her unique employee account within the Associate Kiosk and receiving her employee ID number, Plaintiff electronically reviewed and signed the various forms, including the Arbitration Agreement. Although Plaintiff does not specifically recall signing the Arbitration Agreement, according to JCPenney's system, Plaintiff signed the Arbitration Agreement, along with other employment documents, on October 28, 2013.

---

record reveals genuine issues of material fact regarding the parties' agreement.") (citing *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997)).

[24] *Rangel*, 2010 WL 781722, at *4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

[25] *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1116 (D. Kan. 2003) (citations omitted) (stating that in the context of motions to compel arbitration, courts should apply a standard similar to that applicable in a summary judgment motion).

5

The Arbitration Agreement provides that "My employer and I voluntarily agree to resolve disputes arising from, related to, or asserted after the termination of my employment through mandatory binding arbitration under the jcpenney [sic] Rules of Employment Arbitration. My employer and I voluntarily waive the right to resolve these disputes in courts."[26] The Arbitration of Employment Disputes form instructed Plaintiff to review the JCPenney Rules of Employment Arbitration and directed her to the rules.[27] The Rules of Employment Arbitration further provided that Plaintiff and Defendant agreed, with the exception of four types of claims, to arbitrate "all other claims" between them, including claims for: "[1] discrimination, including harassment and hostile work environment; [2] retaliation for exercising protected rights; [and 3] any claim listed above brought against a supervisory or management employee of JCPenney explicitly or implicitly alleged to have been acting the course or scope of her employment."[28]

In July 2016, Plaintiff's legal counsel informed JCPenney of Plaintiff's intent to pursue litigation by filing a complaint with the EEOC and later in court and of JCPenney's preservation obligations. At that time, JCPenney did not respond to Plaintiff's communication or mention the Arbitration Agreement. Plaintiff filed her Complaint in the United States District Court for the District of Kansas on April 30, 2018.[29] On May 31, 2018, Defendants' local counsel entered her appearance,[30] and Defendants' retained counsel emailed Plaintiff's counsel, advising of the signed Arbitration Agreement.[31]

---

[26] Doc. 10-1, Ex. A.

[27] *Id.*

[28] Doc. 10-1, Ex. D at 2.

[29] Doc. 1.

[30] Doc. 4.

[31] Doc. 10-2.

**III.    Discussion**

Defendants filed this Motion to Stay the Case Pending Arbitration, asserting that Plaintiff's claims are arbitrable under the Arbitration Agreement between the parties.[32] A motion to stay the case pending arbitration is the appropriate procedural vehicle to compel arbitration.[33] Plaintiff contends that, although she signed the Arbitration Agreement, it is unenforceable because she did not knowingly and voluntarily waive her Seventh Amendment right to a jury trial. For the following reasons, explained in detail below, the Court finds that the Arbitration Agreement is valid and enforceable and covers Plaintiff's claims. Thus, the Court overrules Plaintiff's objections and adopts Judge James's Report and Recommendation to grant Defendants' motion.

As an initial matter, the Court recognizes Plaintiff's objections to the Report and Recommendation as proper—the objections are both timely and sufficiently specific to narrow the Court's attention to the issues in dispute. Plaintiff objects on the bases that the magistrate judge, (1) "misapplied the law by presuming that a knowing and voluntary waiver of a constitutional right to a jury trial is proven by the fact of someone signing an arbitration agreement, which . . . resulted in there being no meaningful consideration given to the 'knowing and voluntary' waiver analysis;" (2) "erred by determining that the right to a jury trial can be implicitly waived . . . by signing an arbitration agreement that mentions only the waiver of a judicial forum but otherwise fails to expressly advise the signatory that the right to jury trial is also being waived;" (3) "erred by not allowing discovery on the issue of whether Plaintiff knowingly and voluntarily waived her right to jury trial;" (4) "misapplied the proper legal

---

[32] Doc. 10.

[33] *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017); *see generally Patrick Higgins & Co. v. Brooke Corp.*, No. 06-4111-JAR, 2007 WL 2317123 (D. Kan. Aug. 9, 2007).

standard when she determined, as a matter of law, that a party need not be advised explicitly that signing an arbitration agreement results in the signer waiving their right to a jury trial;" and (5) "incorrectly found that Defendant[s] met [their] burden of proof to show Plaintiff knowingly and voluntarily waived her right to a jury trial."[34] The Court addresses these objections in turn.

### A. Validity and Enforceability of the Arbitration Agreement

The parties do not dispute the existence of the Arbitration Agreement, or that Plaintiff signed the agreement. Instead, Plaintiff argues that the Arbitration Agreement is unenforceable because she did not knowingly and voluntarily waive her right to a jury trial when she signed the Arbitration Agreement. She contends the agreement is unenforceable because (1) she did not understand the implication of the agreement and (2) she had an overall lack of bargaining power in negotiating the terms of her employment. The Court, however, finds that the undisputed facts demonstrate that the Arbitration Agreement is valid and enforceable.[35]

#### 1. Agreement to Arbitrate Employment-Related Disputes

The Court first addresses whether Plaintiff agreed to arbitrate her claims, and finds that upon signing the Arbitration Agreement, Plaintiff contractually agreed to arbitrate her employment-related claims against Defendants. "When deciding whether the parties have agreed to arbitrate, the Court applies ordinary state law principles that govern the formation of contracts."[36] The parties here do not dispute that Kansas contract law applies. Under Kansas

---

[34] Doc. 20, at ¶¶ 1–5.

[35] Although addressing different arguments than those raised before this Court, other United States District Courts have also granted JCPenney's motions to compel arbitration of employment-related claims based on the same arbitration agreement at issue here. *See e.g.*, *Johnson v. J.C. Penney Corp.*, No. A-13-CA-1079-LY, 2014 WL 2765692, at *2, *4 (W.D. Tex. June 18, 2014); *Gonzales v. J.C. Penney Corp.*, No. 13-DV-86-GKF-TLW, 2013 WL 1798684, at *1, *6 (N.D. Okla. Apr. 29, 2013); *Buckhalter v. J.C. Penney Corp.*, No. 3:11-cv-752-CWR-FKB, 2012 WL 4468455, at *1, *3 (S.D. Miss. Sept. 25, 2012).

[36] *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1336 (D. Kan. 2000) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

8

law, a valid contract requires offer, acceptance, and consideration.[37] "Additionally, in order for parties to form a binding contract, the offer and acceptance must manifest a mutual assent or a 'meeting of the minds' on all the essential terms of the contract."[38] "This 'meeting of the minds' requirement is proved when the evidence shows 'with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract.'"[39]

Here, the undisputed facts indicate that Plaintiff agreed to arbitrate her employment-related claims against Defendants. While filling out her new-employee paperwork on October 28, 2013, Plaintiff used her unique employee ID to electronically accept the Binding Arbitration Agreement and other documents. The Mandatory Arbitration Agreement form directed Plaintiff to read the JCPenney Rules of Employment Arbitration, which explains, in detail, the arbitration process and what disputes would be subject to arbitration. To accept the arbitration agreement, Plaintiff was instructed to review the electronic form and select the "I Accept" box on the screen. Although Plaintiff disputes whether she received seven days to sign the Arbitration Agreement to stay employed by JCPenney, this is immaterial with respect to the issue of whether Plaintiff intended to accept the agreement. Based on the undisputed facts, Plaintiff accepted and intended to enter into the Arbitration Agreement with JCPenney as a matter of law.

Plaintiff suggests that the Arbitration Agreement is invalid because, based on her education, lack of sophistication, and background, JCPenney should have explained the agreement to her. This argument is contrary to Kansas law. "In Kansas, 'a contracting party is

---

[37] *Howard v. Ferrellgas Partners, L.P.*, 92 F. Supp. 3d 1115, 1124 (D. Kan. 2015) (citation omitted).

[38] *Id.* (citation omitted); *see also Unified Sch. Dist. No. 446 v. Sandoval*, 286 P.3d 542, 546 (Kan. 2012) ("An unconditional and positive acceptance is required to form a contract.").

[39] *Howard*, 92 F. Supp. 3d at 1124 (quoting *Steel Benders, Inc. v. H.R. Braner Eng'g, Inc.*, No. 86-2368, 1988 U.S. Dist. LEXIS 711, at *7 (D. Kan. Jan. 27, 1998)). Plaintiff's arguments focus on the acceptance required for a valid contract; she makes no argument regarding lack of sufficient consideration.

under the duty to learn the contents of a written contract before signing it.' . . . This principle applies to arbitration agreements."[40] Therefore, by signing the Arbitration Agreement, Plaintiff became "bound by its terms regardless of [any] failure to read and understand its terms."[41]

Plaintiff also asserts that she lacked a meaningful opportunity to negotiate the agreement. She describes a disparity in negotiating position based on her education, previous position as a JCPenney temporary employee, and lack of experience with contracts and arbitration agreements. However, "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."[42] Plaintiff does not allege that Defendants fraudulently induced her to sign the agreement, misrepresented facts, or forced her to sign the agreement under duress.[43] Therefore, Plaintiff's alleged inequality in bargaining power is without merit and does not invalidate the Arbitration Agreement.

### 2. Plaintiff's Waiver of the Right to a Jury Trial

Plaintiff argues that, despite signing the Arbitration Agreement, it should not be enforced because she did not knowingly and voluntarily waive her right to a jury trial. While not disregarding the importance of the Seventh Amendment right to a jury trial, the Court finds that by entering into the Arbitration Agreement Plaintiff implicitly waived her right to a jury trial.

At the outset, the Court recognizes the conflicting policies behind waivers of the right to a jury trial and enforcing arbitration agreements. There are "compelling differences between

---

[40] *Felling v. Hobby Lobby, Inc.*, No. 04-cv-2374-GTV, 2005 WL 928641, at *4 (D. Kan. Apr. 19, 2005) (quoting *Rosenbaum v. Tex. Energies, Inc.*, 736 P.2d 888, 891 (Kan. 1987)).

[41] *Id.* (quoting *Rosenbaum*, 736 P.2d at 892).

[42] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).

[43] *See Felling*, 2005 WL 928641, at * 4–5 (finding that a boiler-plate language arbitration agreement was enforceable when the plaintiff alleged a lack of bargaining power based on defendant not explaining contents of the arbitration agreement and presenting the agreement as "a take it or leave it procedure," but did not allege that defendant fraudulently induced her to sign the agreement, misrepresented facts, or forced her to sign the agreement under duress).

arbitration clauses and jury waiver clauses [most significantly] the policy in favor of arbitration, which contrasts with the policy against waiver of a party's right to trial by jury as guaranteed under the Seventh Amendment."[44] As previously discussed, "[a]rbitration agreements are generally construed broadly in light of the [FAA] policy that 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'"[45] Diametrically opposed to this standard is the general principle that "because 'the right of a jury trial is fundamental, courts indulge every reasonable presumption against waiver.'"[46] Here, despite the importance of the Seventh Amendment, as Plaintiff signed an arbitration agreement it is prudent to recognize the general policies in favor arbitration.

To support her position that signing the Arbitration Agreement does not establish that she knowingly and voluntarily waived her right to a jury trial, Plaintiff relies primarily on Sixth Circuit cases where courts have analyzed the waiver of the right to a jury trial in conjunction with determining the validity of an arbitration agreement. In *Hergenreder v. Bickford*, the Sixth Circuit determined first that the parties did not form an arbitration agreement under Michigan law because there was no offer and acceptance of the agreement, and the plaintiff did not manifest an intent to be bound by the offer.[47] The court then noted, in dicta, that the plaintiff had not waived her right to a jury trial because based on five factors, there was not a knowing and voluntary waiver of the right.[48] In *Hudson v. BAH Shoney's Corp.*, the United States District

---

[44] *Walker v. SC Realty Servs., Inc.*, No. 15-CV-9932-JAR-TJJ, 2016 WL 4245487, at *5 (D. Kan. Aug. 11, 2016) (citing *Adelphia Recovery Tr. v. Bank of Am., N.A.*, No. 05 CIV. 9050 (LMM), 2009 WL 2031855, at *12 (S.D.N.Y. July 8, 2009)).

[45] *Id.* (quoting *Adelphia Recovery Tr.*, 2009 WL 2031855, at *12).

[46] *Id.* at *2 (quoting *Aetna Ins. Co. v. Kenney to Use of Bogash*, 301 U.S. 389, 393 (1937)).

[47] *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417–19 (6th Cir. 2011).

[48] *Id.* at 420–21 ("Therefore, even if an arbitration agreement were formed, on these facts Hergenreder did not knowingly and voluntarily waive her right to a jury trial. As explained above, however, we hold that Hergenreder did not enter into a binding arbitration agreement . . . ."). The court in *Hergenreder* considered the

Court for the Middle District of Tennessee completed a knowing and voluntary analysis and declined to enforce an arbitration agreement based on its finding that the plaintiff had not knowingly and voluntarily waived her right to a jury trial.[49] The court specifically focused on the plaintiff's tenth grade education and emphasized that the arbitration policy was "buried in a 50-page Employee Handbook," that she was only instructed to review the parts in the handbook relating to dress code and stealing time, and that the information on arbitration did not explain the legal claims that were covered by the policy.[50]

The Tenth Circuit has yet to apply the knowing and voluntary analysis of a jury trial waiver in the context of an arbitration agreement. Although discussing the requirements of a knowing and voluntary waiver of jury trial, the Tenth Circuit and District of Kansas decisions cited by Plaintiff do not involve an analysis of the enforceability of an arbitration agreement.[51] Instead, these cases involve the respective defendants arguing that a federal court, and not a jury, should decide the plaintiff's claims based on waiver of jury trial provisions found in the respective contracts.[52] By contrast, in the instant case, when Plaintiff entered into the Arbitration

---

following five factors in its knowing and voluntary analysis: "(1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Id.* at 720–21 (citation omitted).

[49] *Hudson v. BAH Shoney's Corp.*, 263 F. Supp. 3d 661, 671 (M.D. Tenn. 2017).

[50] *Id.* at 668–71.

[51] *See Christensen v. Diversified Builders Inc.*, 331 F.2d 992, 994 (10th Cir. 1994) (discussing only the Seventh Amendment right to a jury trial); *Hulsey v. West*, 966 F.2d 579, 581 (10th Cir. 1992) (discussing a waiver of jury trial provision in a loan agreement, but not mentioning an arbitration provision); *Walker v. SC Realty Servs., Inc.*, No. 15-CV-9932-JAR-TJJ, 2016 WL 4245487, at *1, *3 (D. Kan. Aug. 11, 2016) (evaluating a waiver of jury trial provision that was included in lieu of an arbitration agreement in an employment contract); *Bevill Co. v. Sprint/United Mgmt. Co.*, No. 01-2524-CM, 2006 WL 2921006, at *3 (D. Kan. Oct. 11, 2006) (deciding that the court could not determine, as a matter of law, whether a waiver of jury trial provision was enforceable, and thus declining to address the validity of a separate arbitration clause that applied if the waiver of jury trial was unenforceable).

[52] *See Christensen*, 331 F.2d at 994; *Hulsey*, 966 F.2d at 581; *Walker*, 2016 WL 4245487, at *1, *3; *Bevill Co.*, 2006 WL 2921006, at *3.

Agreement, she agreed that disputes covered by the agreement would be decided outside the traditional judicial forum. As the Seventh Circuit explained,

> An arbitration clause in a contract constitutes a deliberate selection by the parties of an alternative method of dispute resolution that involves neither courts nor juries. Since the Seventh Amendment right to trial by jury is incident to and predicated upon the right to a federal judicial forum, an arbitration provision waives the right to resolve a dispute through litigation in a judicial forum and *implicitly and necessarily* waives the parties' right to a jury trial.[53]

"A party waives its right to a jury trial by signing an agreement to arbitrate . . . and there is no constitutional right to a jury trial on claims which are required to be arbitrated pursuant to a valid arbitration provision."[54] Therefore, by agreeing to arbitrate the claims presently before the Court, Plaintiff waived her right to a jury trial with respect to these claims by removing them from the judicial system.

Further, contrary to Plaintiff's assertion that the omission of the phrase "jury trial" in the arbitration agreement precludes enforceability, there is no binding authority on this Court that requires such language.[55] Instead, courts within and outside the Tenth Circuit have recognized that the "obvious consequence of an arbitration agreement is a waiver of the right to a jury trial."[56] Thus, entering into an arbitration agreement necessarily constitutes an implicit waiver of

---

[53] *Silc v. Crossetti*, 956 F. Supp. 2d 957, 958 (N.D. Ill. 2013) (citing *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir.2010); and *Carter v. SSC Odin Operating Co.*, 927 N.E.2d 1207, 1220 (Ill. 2010)) (emphasis added).

[54] *Urbanic v. Travelers Ins. Co.*, No. 10-CV-02368-WYD-MJW, 2011 WL 1743412, at *9 (D. Colo. May 6, 2011) (citations omitted).

[55] Plaintiff cites *Thiessen v. Gen. Elec. Capital Corp.*, a case involving the Older Workers Benefit Protection Act and the Age Discrimination in Employment Act ("ADEA"), as support for this proposition. 232 F. Supp. 2d 1230 (D. Kan. 2002). However, this case stands for the narrow proposition that a release involving claims under the ADEA must include language and meet minimum statutory requirements, including that ADEA be referenced in a release "to enable the individual presented with a waiver of rights to refer to the statute in an effort to learn more about the individual's rights under statute." *Id.* at 1234, 1236. The court makes no direct or implicit reference to any type of requirement that an arbitration agreement must explicitly provide that the agreement waives a right to a jury trial.

[56] *Leone v. Owsley*, No. 12-CV-02961-PAB-KMT, 2016 WL 9735714, at *2 (D. Colo. June 21, 2016) (citing *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001) (discussing how "the obvious

a jury trial, even if the waiver is not explicitly included in the language of the agreement. Unlike in *Leone v. Owsley*, where the parties agreed to have issues "determined by *a court of competent jurisdiction*,"[57] here, the parties explicitly agreed to resolve employment-related disputes through "mandatory binding *arbitration*"[58] and "waive[d]the right to resolve these disputes in courts."[59] Thus, the obvious and necessary consequence of the Arbitration Agreement was the waiver of the right to a jury trial.[60] Therefore, the lack of an explicit reference to "jury trial" in the Arbitration Agreement does not preclude this Court from finding that Plaintiff waived her right to a jury trial based on the valid Arbitration Agreement. Accordingly, as a matter of law, the Arbitration Agreement is valid and enforceable.

### 3. Defendants' Right to Compel Arbitration

Although the argument is not clearly articulated in her briefing, Plaintiff's declaration suggests that Defendants waived their right to enforce the Arbitration Agreement because they did not immediately notify Plaintiff that they planned to enforce their right to arbitrate the disputes.[61] The Court, however, finds that Defendants did not waive their right to enforce the Arbitration Agreement.

---

consequence of an arbitration agreement is a waiver of the right to a jury trial," but finding that the defendants did not establish how the same waiver of a jury trial consequence resulted from an agreement to have issues "determined by a court of competent jurisdiction"); *see also Roundtree v. PrimeFlight Aviation Servs., Inc.*, No. CV 16-9609-CCC-MF, 2017 WL 4697070, at *4 (D. N.J. Oct. 19, 2017) (quoting *Emergency Physicians of St. Clare's, LLC v. Proassurance Corp.*, No. 09–6244, 2010 WL 3311861, at *6 (D. N.J. Aug. 19, 2010) ("Even a person of common knowledge, but without higher formal education, might very well understand that if one waives access to a court, one has waived access to a jury.").

[57] *Leone*, 2016 WL 9735714, at *2 (emphasis added).

[58] Doc. 10-1, Ex. A.

[59] *Id.*

[60] *See Roundtree*, 2017 WL 4697070, at *4 (finding that a plaintiff clearly waived the right to a jury trial when the arbitration agreement included an acknowledgement by the plaintiff that they "'must arbitrate any and all employment-related claims against' Defendant and that they '*may not file a lawsuit in court*' in regard to any claims or disputes covered by' the Arbitration Agreement") (emphasis in original).

[61] Doc. 17-1, at ¶¶ 15–19.

"A party asserting a waiver of arbitration has a heavy burden of proof."[62] The Tenth Circuit "give[s] substantial weight to the 'strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration.'"[63] While there is no rule as to what constitutes waiver of a contractual right to arbitrate, the Tenth Circuit has articulated the following as factors useful to making this assessment:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place;" and (6) whether the delay "affected, misled, or prejudiced" the opposing party.[64]

Plaintiff's waiver argument does not correspond to these factors. Alternatively, Defendants' actions are consistent with the right to arbitrate as Defendants took steps to compel arbitration prior to the parties' substantial use of litigation resources and did not indicate a desire to proceed with litigation in the judicial system. Although Defendants did not notify Plaintiff of their intent to enforce the Arbitration Agreement when her counsel first notified them of the possibility of a lawsuit, upon being served with the Complaint, defense counsel provided Plaintiff's counsel with a copy of the Arbitration Agreement, asked for dismissal of the suit, and volunteered to assist in initiating the arbitration. Moreover, in Defendants' Corporate Disclosure

---

[62] *Peterson v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988) (citation omitted).

[63] *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 774 (10th Cir. 2010) (quoting *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488 (10th Cir. 1994)) (citation omitted).

[64] *Peterson*, 849 F.2d at 467–68 (citing and quoting *Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980), *cert denied*, 449 U.S. 824 (1980)).

Statement[65] and the Joint Motion for 30-Day Stay,[66] Defendants reserved the right to compel arbitration if Plaintiff refused to submit her claims to arbitration. Consequently, when Plaintiff refused to abide by the Arbitration Agreement, Defendants filed their instant motion. None of these actions suggest that Defendants waived their right to compel arbitration.

### B. Scope of the Arbitration Agreement

"If a contract contains an arbitration clause, a presumption of arbitrability arises, particularly if the clause in question contains . . . broad and sweeping language."[67] "When determining the scope of an arbitration agreement 'doubts should be resolved in favor of coverage.'"[68] The Court finds that the Arbitration Agreement encompasses Plaintiff's Title VII, Pregnancy Discrimination Act, and FMLA claims.

Here, the Arbitration Agreement provides that Plaintiff and Defendant agreed "to resolve disputes arising from, related to, or asserted after the termination of [Plaintiff's] employment through mandatory binding arbitration under the jcpenney [sic] Rules of Employment Arbitration."[69] The Rules of Employment Arbitration further specify that the agreement to arbitrate applied to claims for: "[1] discrimination, including harassment and hostile work environment; [2] retaliation for exercising protected rights; [and 3] any claim listed above brought against a supervisory or management employee of JCPenney explicitly or implicitly alleged to have been acting the course or scope of her employment."[70] Plaintiff's employment-

---

[65] Doc. 5.

[66] Doc. 7.

[67] *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995); *see also Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014).

[68] *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

[69] Doc. 10-1, Ex. A.

[70] Doc. 10-1, Ex. D.

related claims against both Defendants are the exact type of claims Plaintiff agreed to arbitrate. Moreover, Plaintiff does not dispute that the Binding Arbitration Agreement covers her claims. The Court thus finds that Plaintiff's claims are arbitrable under the Arbitration Agreement.

Therefore, for the preceding reasons, the Court overrules and denies Plaintiff's objections, and the Court adopts Magistrate Judge James's Report and Recommendations (Doc. 19).

**IT IS THEREFORE ORDERED BY THE COURT** that the Court adopts the Report and Recommendations (Doc. 19) of Magistrate Judge James and grants Defendants' Motion to Stay the Case Pending Arbitration (Doc. 9). This case is hereby stayed pending arbitration. The parties shall file a status report no later than May 2, 2019 advising the Court whether the arbitration proceeding is ongoing, and whether a date has been set for the proceeding.

**IT IS SO ORDERED.**

Dated: January 2, 2019

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE